UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THE STANDARD FIRE INSURANCE COMPANY,
Plaintiff,

v.

WILLIAM J. MILNER,
REBECCA L. GUSHLAW, Individually and as Natural Parent, Next Friend and Guardian of JASMINE M. JOHNSON, PRESTON E. JOHNSON, TREVOR A. JOHNSON, and COLBEY J. JOHNSON (minors); and REBECCA L. GUSHLAW and JUDITH GUSHLAW, as Co-Administrators of the Estate of ELDRICK L. JOHNSON,
Defendants.

CIVIL ACTION NO. 07-126 ML

**THE STANDARD FIRE INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The Standard Fire Insurance Company, in the above-captioned declaratory judgment action, submits this Memorandum of Law in support of its motion for summary judgment. Standard Fire issued a homeowners policy to William Milner, and the Gushlaws have made a claim against that homeowners policy as a result of an automobile accident.

## I. Facts.

### A. The Underlying Lawsuit.

On August 13, 2005, Matthew J. Milner (dob: 1-28-85) and Eldrick Johnson were involved in an automobile accident in Scituate, Rhode Island. Matthew Milner, was driving a car that his father, William Milner, owned, and that Allstate Insurance Company insured. As a result of that automobile accident, both Matthew Milner and Eldrick Johnson were killed. The



644484v1

Gushlaws then instituted the underlying lawsuit in Providence County Superior Court, naming as defendants William J. Milner and Allstate Insurance Company.

The Gushlaws' second amended complaint contains five counts: Count I, "Negligence of Matthew J. Milner and William J. Milner"; Count II, "Negligence of William J. Milner"; Count III, "Negligence of William J. Milner"; Count IV, "Claim against Allstate Insurance Company"; and, Count V, "Negligence of John Doe." Exhibit 1 (second amended complaint). In their second amended complaint, the Gushlaws have alleged as to William J. Milner that:

- William Milner is the father of Matthew Milner, and Matthew died on August 13, 2005, [in the subject automobile accident], (para. 6);

- "At all relevant times" Matthew Milner was operating a motor vehicle that William Milner owned, and that vehicle was insured with Allstate Insurance Company (Count I, paras. 4-5, Count II, para. 3);

- Matthew was operating the vehicle with the knowledge, permission and consent of his father, William Milner (Count I, para. 6; Count II, para. 2; and Count III, para. 3);

- William Milner owed a duty "to use due care in selecting persons to entrust and operate a motor vehicle he owned" (Count II, para. 4);

- William Milner "breached the duty owed by negligently entrusting" the vehicle to Matthew (Count II, para. 5);

- William Milner "negligently permitted and consented" to Matthew operating the vehicle that William Milner owned (Count II, para. 6; Count III, para. 7);

- William Milner "further breached the duty owed and is vicariously liable for the negligent acts" of his son Matthew (Count II, para. 7; Count III, para. 8);

- As a result of William Milner's negligence, the plaintiff's decedent was injured and died (Count II, para. 10);

- William Milner owed a duty "to use due care in permitting and allowing persons to operate the motor vehicle he owned, and/or which was a vehicle of his household" (Count III, para. 4);

- William Milner owed a duty "to use due care in allowing the vehicle he owned, and/or which was a vehicle of his household to be available and accessible to decedent Matthew J. Milner," and he negligently breached that duty (Count III, para. 5 & 9);

- William Milner negligently permitted Matthew to operate the vehicle (Count III, para. 6);

- William Milner owed a duty "to use due care in the supervision of and activities of his children", including Matthew, and he breached that duty by "negligently supervising his son, Matthew J. Milner, a minor,[1] thereby allowing and/or permitting" Matthew to operate the vehicle (Count III, para. 11).

Exhibit 1 (second amended complaint).

**B. Denial of Coverage Letter.**

In an April 6, 2007, letter, The Standard Fire Insurance Company informed William J. Milner that there was no coverage under his homeowners policy for the claims of the Gushlaws. Exhibit 2 (coverage denial letter). In that letter, Standard Fire cited to the homeowners policy exclusions, and informed Milner that there was no coverage for the Gushlaw's claims as they arose out of the ownership, maintenance or use of a motor vehicle owned or operated by any insured. Additionally, the coverage denial letter stated that the subject homeowners policy excluded coverage for claims arising out of the negligent entrustment by any insured of a motor vehicle to any person, as well as vicarious liability for the actions of a child using a motor vehicle. Exhibit 2.

**C. Homeowners Insurance Policy.**

The Standard Fire Insurance Company issued homeowners policy number 947388690 633 1 to William Milner and Linda Milner, with effective dates of August 4, 2005 to August 4, 2006. Exhibit 3 (homeowners policy). The homeowners policy (form HO-3(06-91)), provides, in pertinent part:

[1] Matthew Milner was 20 years old, and not a minor. He was born January 28, 1985, and the accident occurred August 13, 2005.

DEFINITIONS

2. **"bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death that results.

* * *

4. **"insured"** means you and the following residents of your household:

a. your relatives;

b. any other person under the age of 21 who is in the care of any person named above.

* * *

SECTION II – LIABILITY COVERAGES

COVERAGE E – PERSONAL LIABILITY

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, even if the claim or suit is false, we will:

**a.** Pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**; and

**b.** provide a defense at our expense by counsel of our choice, even if the suit is groundless, false, or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

* * *

SECTION II -- EXCLUSIONS

**1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others** do not apply to **bodily injury** or **property damage:**

* * *

**f.** Arising out of :

**(1)** the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances,

> including trailers, owned or operated by or rented or loaned to any **insured;**
>
> **(2)** the entrustment by any **insured** of a motor vehicle or any other motorized land conveyance to any person; or
>
> **(3)** vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

Exhibit 3 (form HO-3 (06-91) pp. 1 & 14-15) (emphasis in original)).

William Milner is a named insured on the homeowners policy. Exhibit 3. His son, Matthew Milner, lived with his parents at 4 Chiswick Road, Greenville, Rhode Island. As such, Matthew Milner is also an insured under the homeowner policy, as he was William Milner's relative (his son) and a member of his household. Exhibit 5 (Milner deposition); Exhibit 6 (police report, p.1).

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a summary judgment motion, and states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c).

## III. Argument

### A. Milner's homeowners policy does not provide coverage for the Gushlaws claims, as the homeowners policy contains an exclusion for bodily injury arising out of the ownership, maintenance or use of a motor vehicle owned or operated by any insured. That exclusion is clear and unambiguous, and should be construed as written.

The terms of an insurance policy are interpreted according to the same rules of construction governing contracts. Town of Cumberland v. Rhode Island Interlocal Risk Management Trust, 860 A.2d 1210, 1215 (R.I. 2004); Pawtucket Mutual Insurance Co. v. Gay, 786 A.2d 383, 386 (R.I. 2001). The court looks at the four corners of a policy, viewing it "in its entirety, affording its terms their 'plain, ordinary and usual meaning.'" Casco Indemnity Co. v. Gonsalves, 839 A.2d 546, 548 (R.I. 2004) (quoting American Commerce Insurance Co. v. Porto, 811 A.2d 1185, 1192 (R.I. 2002)). The court should follow the literal policy language unless it deems the policy to be ambiguous. Pawtucket Mutual Insurance Co., 786 A.2d at 386 (citing Sjogren v. Metropolitan Property & Casualty Insurance Co., 703 A.2d 608, 610 (R.I. 1997)). As the Rhode Island Supreme Court has stated,

> The language used in the policy must be given its plain, ordinary, and usual meaning. When the terms are found to be clear and unambiguous, the task of judicial construction is at an end. The contract terms must then be applied as written and the parties are bound by them.

Malo v. Aetna Casualty and Sur. Co., 459 A.2d 954, 956 (R.I. 1983) (citations omitted). A policy "is not to be described as ambiguous because a word is viewed in isolation or a phrase is taken out of context." McGowan v. Connecticut Gen. Life Ins. Co., 289 A.2d 428, 429 (R.I. 1972).

The Rhode Island Supreme Court has considered the term "arising out of" in an insurance policy's exclusory provisions twice previously, and both times declined to read the term “arising out of” as ambiguous. American Commerce Ins., 811 A.2d. at 1195 (citing Hingham Mutual Fire Insurance Co. v. Heroux, 549 A.2d 265, 266 (R.I. 1988) (context of uninsured-premises exclusion), and Howard v. Guidant Mutual Insurance Group, 785 A.2d 561, 562-63 (R.I. 2001) (context of sexual-misconduct exclusion)). In the absence of an ambiguity, the court affords the

term its plain, ordinary, and literal meaning, enforcing what it deems to be the objective manifestation of the parties' expectations. American Commerce Ins., 811 A.2d. at 1195.

The phrase "arising out of" within policy language is generally considered to mean "flowing from" or "having its origin in," thereby "*indicating that there only need be 'a' causal connection,* rather than a proximate causal connection." American Commerce Ins. Co. v. Porto, 811 A.2d 1185, 1194-95 (R.I. 2002) (citing 7 *Couch on Insurance* 3d § 101:54 at 101-147-48 (1997) (emphasis in original). As the federal district court observed in analyzing an "arising out of" the "ownership, maintenance, [or] use . . . [of] an auto" exclusion in a commercial general liability policy, "In the most general terms, the term 'arising out of' connotes a causal connection between one thing and another, here, a risk and a potential harm." Hartford Fire Ins. Co. v. Rhode Island Public Transit Authority, 1999 U.S. Dist. LEXIS 21099 (Lisi, J.) (pp. 13-14) (citing Hingham Mutual Fire Insurance Co. v. Heroux, 549 A.2d 265, 267 (R.I. 1988)). That court further observed that the "arising out of" auto use exclusion was not ambiguous, applied the exclusion as written, and found that the policy language excluded coverage, as the injured party's injuries clearly arose out of the use of an auto (had been hit by a bus). Hartford Fire Ins. Co., 1999 U.S. Dist. LEXIS 21099 (Lisi, J.).

As the Rhode Island Supreme Court has explained,

> The traditional tort concept of proximate cause focuses on legal culpability for the accident, and whether the conduct of the alleged tortfeasor in any way produced plaintiff's injuries. "Proximate cause [in tort cases] is established by showing that but for the negligence of the tortfeasor, injury to the plaintiff would not have occurred." English v. Green, 787 A.2d 1146, 1151 (RI. 2001) (quoting Skaling v. Aetna Insurance Co., 742 A.2d 282, 288 (RI. 1999)). This concept of proximate cause, however, is different from the causation question in insurance-coverage disputes:
>
>> "In insurance cases, the concern is ordinarily not with the question of 'culpability' or why the injury occurred, but only with the nature of the injury and how it physically happened, which must then be compared with the language



644484v1

> of the insurance policy to determine whether this type of injury from this type of physical cause was intended to be covered by the policy. * * * In essence, when a claim for damages is grounded on an insurance contract, the liability of the insurer depends upon whether the damages sustained were a result of a risk or hazard against which the insured was covered by the policy." 7 *Couch on Insurance* 3d § 101:41 at 101-131-32.

American Commerce Ins. Co. v. Porto, 811 A.2d at 1195. "[T]he relevant inquiry for determining potential coverage under an insurance policy of this type is not the theories of relief in the complaint, **but whether the injures alleged by plaintiff have a causal connection with whatever type of conduct or situation that the policy has excluded from coverage**." American Commerce Ins. Co. v. Porto, 811 A.2d at 1196 (emphasis added) .

Here, all Gushlaw's alleged injuries and claims arise out of, and are causally connected to the automobile accident. Their claims against William Milner all come about because of the automobile accident between his son, Matthew, and Eldrick Johnson. The Gushlaw's claims of negligence, negligent entrustment, vicarious liability, negligent supervision and all other claims in their second amended complaint are connected to Eldrick Johnson's death as a result of the automobile accident. Put another way, were there no automobile accident, the Gushlaws would have no injuries and no claims.

William Milner is a named insured under the homeowners policy, and he owned the motor vehicle that Matthew Milner was operating when the accident occurred. Eldrick Johnson suffered bodily injury that undisputedly arose out of the use of a motor vehicle that William Milner owned. The Standard Fire homeowners policy excludes coverage for "bodily injury . . . arising out of the . . . ownership [or] use . . . of motor vehicles owned . . . by . . . any insured." Exhibit 3 (Section II-Exclusions, 1.f.(1)). Accordingly, regardless of however artfully the causes of actions or claims are phrased in the complaint, the claimed bodily injury arises out of

the use of a motor vehicle owned by William Milner, and is clearly excluded under the homeowners policy.

As the federal district court in Peerless Insurance Company v. Annie's, Inc., observed in excluding coverage under a general liability policy where a vehicle being driven on Annie's business was involved in an accident:

> In short, no matter how imaginative [intervenor David] Rivera may be in describing the events giving rise to his injuries, the conclusion is inescapable that his injuries arose out of the 'use' and 'entrustment' of an automobile. This court is duty-bound to apply unambiguous policy provisions as written. Therefore, it must necessarily find that Rivera's injuries are not covered by the Peerless policy.

Peerless Insurance Co. v. Annie's, Inc. v. Rivera (Lawyers Weekly No. 52-004-98) (Lisi, J.) (CA 95-0314ML). The United States District Court of Appeals for the First Circuit, in an unpublished decision, upheld that decision, and stated, in pertinent part:

> [T]he district court, in an extensive memorandum, addressed defendants' contention that a provision excluding from coverage bodily injury and property damage arising out of the entrustment of an auto to others did not apply when the injury or damage was due to the negligent selection, training, or supervision of the driver. The exclusion clause makes no such exception. The district court's memorandum fully demonstrated the unsoundness of defendants' contention.

Peerless Ins. Co. v. Annie's, Inc., 181 F.3d 80 (1st Cir. 1998). Similarly, the Milner's homeowners policy makes no exception for "negligent supervision" or any other claims in its exclusion from coverage of bodily injury arising out of the ownership, maintenance or use of a motor vehicle, or arising out of the entrustment "by any insured of a motor vehicle . . . to any

person." The exclusions are clear and unambiguous, and should be applied as written – excluding coverage for the Gushlaw's claims.[2]

**B. <u>The Gushlaws claims of negligent entrustment and vicarious liability are also excluded from coverage under Milner's homeowners policy under Section II-Exclusions, 1. f (2) & (3), which deal explicitly with negligent entrustment and vicarious liability.</u>**

The homeowners policy also contains exclusions for bodily injury arising out of the entrustment of a vehicle to any person, and for bodily injury arising out of vicarious liability for the actions of a child or minor using a motor vehicle. (<u>Exhibit 3</u>, Section II-Exclusion, 1.f.(2) & (3)). The Gushlaw's second amended complaint alleges as against William Milner claims of negligent entrustment[3] and vicarious liability for the negligent acts of his son, Matthew Milner. (Counts II & III). Therefore, by the exclusion's express terms, there is no coverage under the homeowners' policy for the Gushlaw's claims of negligent entrustment and vicarious liability.

## <u>IV. Conclusion</u>

For the reasons stated above and those that will be raised at the oral argument of this motion, The Standard Fire Insurance Company homeowners policy that it issued to the Milners does not provide coverage for the claims in the underlying suit. As such, Standard Fire requests that this court to grant its summary judgment motion.

---

[2] Further, the expectations of the parties to this homeowners insurance policy are met in excluding coverage under a homeowners policy for bodily injury arising out of the ownership, maintenance or use of a motor vehicle. As expected, the Milners had obtained automobile insurance with Allstate Insurance Company for bodily injury arising out of the ownership, maintenance, or use of a motor vehicle.

[3] Rhode Island does not have a cause of action for negligent entrustment. As the court stated in <u>Regan v. Nissan North America</u>, "Although plaintiff recognized that this Court has not adopted the theory of negligent entrustment, he nevertheless suggested that this Court look at a variety of factors, including the driver's age and previous actions, to 'furnish the basis for a reasonable inference that defendant knew or should have known that there was a reasonable probability of danger to its patrons from the operation of automobiles * * *.' <u>Sabourin v. LBC, Inc</u>., 731 F. Supp. 1145, 1148-49 (D.R.I. 1990). To date, this Court has not recognized negligent entrustment as a basis for liability, and we decline to do so in this case." <u>Regan v. Nissan North America</u>, 810 A.2d 255, 257 (R.I. 2002).

THE STANDARD FIRE INSURANCE COMPANY,
By its attorneys,
MORRISON MAHONEY LLP,

/ s/ Paul Sullivan

Paul V. Sullivan (#5712)
121 South Main Street, Suite 600
Providence, RI 02903
Tel: (401) 331-4660
Fax: (401) 351-4420
pvsullivan@morrisonmahoney.com

**CERTIFICATE OF SERVICE**

I hereby certify that an exact copy of the within document was electronically mailed to the Electronic Case Filing system of the United States District Court for its distribution to all counsel of record, this 15th day of November, 2007.

/ s / Paul Sullivan

Paul V. Sullivan