UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE STANDARD FIRE INSURANCE COMPANY<br><br>Plaintiff<br><br>-vs.-<br><br>WILLIAM J. MILNER,<br>REBECCA L. GUSHLAW, Individually and as Natural Parent, Next Friend and Guardian of JASMINE M. JOHNSON (minor),<br>PRESTON E. JOHNSON (minor),<br>TREVOR A. JOHNSON (minor),<br>COLBEY J. JOHNSON (minor),<br>REBECCA L. GUSHLAW, and<br>JUDITH GUSHLAW, as Co-Administrators of the Estate of ELDRICK L. JOHNSON<br><br>Defendants | C.A. NO.: PC07-126 ML |

**DEFENDANTS REBECCA L. GUSHLAW, ET ALS AND JUDITH GUSHLAW'S MEMORANDUM IN SUPPORT OF THEIR OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

It should be stated at the onset that counsel for Defendants Rebecca L. Gushlaw, Individually and as Natural Parent, Next Friend, and Guardian of Jasmine M. Johnson (minor), Preston E. Johnson (minor), Trevor A. Johnson (minor), Colbey J. Johnson (minor), and Rebecca L. Gushlaw and Judith Gushlaw, as Co-Administrators of the Estate of Eldrick L. Johnson, contemplated filing a separate Motion for Summary Judgment. However, since the memorandum in support of that motion would have been duplicative of the instant Memorandum in Support of Defendants' Objection to Plaintiff's Motion for Summary Judgment, in the interest of brevity and judicial economy, counsel chose to submit just one memorandum.

## I. FACTS

On August 13, 2005, at approximately 1:30 in the morning, Defendant's decedent, Eldrick L. Johnson, was driving home after work to be with his wife and four children. He was traveling north on Plainfield Pike in the Town of Scituate approaching an area called "Crazy Corners." Unfortunately, at the same time, a vehicle operated by Matthew J. Milner was being driven in a southerly direction at a high rate of speed, at times greater than 80 miles per hour, on Plainfield Pike approaching the same intersection. Approximately 100 feet south of this intersection, Matthew Milner's vehicle crossed over the center line and struck the front driver's side of Mr. Johnson's motor vehicle. Matthew Milner's vehicle veered off the west shoulder of Plaintiff Pike, traveled down an embankment and came to rest facing north. Matthew Milner was ejected from his vehicle. He was dead at the scene. (See Exhibit "A" – Rhode Island State Police Narrative of Trooper Hartwell.)

Mr. Johnson's vehicle came to rest facing west with its rear end against the east guardrail. Mr. Johnson was conscious when the police and medical personnel arrived at the scene and was speaking with the Scituate firefighters. He was trapped and had to be extricated from his vehicle by the Scituate Fire & Rescue teams. Mr. Johnson was later pronounced dead upon his arrival at Rhode Island Hospital. (See Exhibit "A".)

Due to this tragedy, Mr. Johnson left his wife, Rebecca L. Gushlaw, as well as his four children, Jasmine, Preston, Trevor and Colbey (See Exhibit "E"). Their ages ranged from 6 months to 7 years old at the time of their father's death.

Police investigators performed a background check of the State Police system which revealed multiple contacts by Matthew Milner with several police departments. On September 9, 2002, he was issued a summons for operating a motor vehicle 28 miles over

the posted speed limit (63 mph in a 35 mph zone on Putnam Pike in Smithfield). Rhode Island State Police detectives also made an inquiry with the Smithfield Police Department with regard to Milner's prior contact with law enforcement. There were at least 6 multiple motor vehicle violations. At the time of this accident, Milner's operator's license revealed 6 current suspensions. They are as follows:

1. On August 26, 2004 for a period of one month per order of the court based on his driving record.

2. On September 16, 2004 for a period of two months per order of the court based on his driving record.

3. On September 30, 2004 for an indefinite period for failure to pay/appear at a Rhode Island Traffic Tribunal (RITT) hearing.

4. On September 30, 2004 for an indefinite period for failure to pay/appear for RITT hearing.

5. On October 21, 2004 for an indefinite period for failure to pay/appear for a RITT hearing.

6. On October 27, 2004 for an indefinite period for failure to file an accident report. This subject matter accident occurred on August 13, 2005. (See Exhibit "B" – Rhode Island State Police Narrative of Detective Doucet.)

According to the Driver's Abstract received from the Rhode Island Division of Motor Vehicles, at the time of the subject matter accident, Matt Milner's license was suspended. (See Exhibit "C" – Driving Abstract).

Upon autopsy, toxicology testing of Matthew J. Milner revealed the following:

<u>Results</u>:

Ethanol

| | |
|---|---|
| Post mortem heart blood | 162 mg/dl |
| Post mortem vitreous | 207 mg/dl |

(See Exhibit "D" - Toxicology Report)

## II. <u>TRAVEL OF THIS CASE</u>

On August 26, 2005, a Complaint was filed in the Providence County Superior Court on behalf of Rebecca L. Gushlaw, the wife to the Plaintiff's decedent, Eldrick L. Johnson, as well as his four young children. The complaint was later amended on two occasions. The last amendment was filed on March 2, 2007 on behalf of the same Plaintiffs. (See Exhibit "E" – Second Amended Complaint.) The Defendants presently named are the following:

- William J. Milner, the father of Matthew; and
- Allstate Insurance Company, the insurer of the motor vehicle Matthew J. Milner was driving at the time of this fatal accident.

In addition to the claims of negligence concerning the breach of due care by Matthew J. Milner in the operation of the motor vehicle in question, allegations against his father, William J. Milner, were also asserted. These allegations include that of negligence as the owner of the vehicle. (See Exhibit "E" - Count II, page 5.) Mr. Milner is the named insured for the motor vehicle his son was driving (See Exhibit "F" - Auto Policy Declaration Sheet).

Additional negligence claims asserted against Mr. Milner are further noted in Count III. They are as follows:

1. The allegations set forth in Paragraphs 1 through 10 of Count I are incorporated by reference herein as if set forth in their entirety.

2. The allegations set forth in Paragraphs 1 through 10 of Count II are incorporated by reference herein as if set forth in their entirety.

3. At all relevant times mentioned herein, decedent Matthew J. Milner was operating the subject matter motor vehicle owned by Defendant William J. Milner and/or was a vehicle of the Milner household, with the knowledge, permission and consent of Defendant William J. Milner.

4. At all relevant times herein mentioned, Defendant William J. Milner owed a duty to the general public, including Eldrick L. Johnson, to use due care in permitting and allowing persons to operate the motor vehicle he owned, and/or which was a vehicle of his household.

5. At all relevant times herein mentioned, Defendant William J. Milner owed a duty to the general public, including Eldrick L. Johnson, to use due care in allowing the vehicle he owned and/or which was a vehicle of his household to be available and accessible to decedent Matthew J. Milner.

6. At all relevant times herein mentioned, Defendant William J. Milner breached the duties owed by negligently permitting the subject matter motor vehicle to be operated by decedent Matthew J. Milner.

7. At all relevant times herein mentioned, Defendant William J. Milner negligently permitted and consented to decedent Matthew J. Milner operating the motor vehicle he owned and/or which was of his household.

8. At all relevant times herein mentioned, Defendant William J. Milner further breached the duty owed and is vicariously liable for the negligent acts as aforementioned of his son, Matthew J. Milner.

9. At all relevant times herein mentioned, Defendant William J. Milner further breached the duty owed by negligently allowing the motor vehicle he owned and/or which was of his household to be available and accessible for use by decedent Matthew J. Milner.

10. At all relevant times mentioned herein, Defendant William J. Milner further owned a duty to the general public, including Eldrick L. Johnson, to use due care in the supervision of and activities of his children, including decedent Matthew J. Milner, a minor.

11. At all relevant times herein mentioned, Defendant William J. Milner breached the duty owed by negligently supervising his son, Matthew J. Milner, a minor, thereby allowing and/or permitting the subject matter motor vehicle to be operated by Matthew J. Milner.

(See Exhibit "E" - page 8.)

## III. INSURANCE LIABILITY COVERAGE

As aforementioned, claims of negligent operation of the motor vehicle by Matthew Milner have been made against the responsible party. Allstate Insurance Company insured the vehicle that Matthew Milner was driving through a policy under his father's name.

In light of the additional claims made directly against Mr. Milner for his **separate** acts of negligence in failing to properly supervise his son, claims against Mr. Milner's homeowner's policy with the Standard Fire Insurance Company (a/k/a Traveler's Insurance Company) have been made. <u>It is this particular policy of insurance that is the subject of the declaratory judgment action</u>.

The applicable sections of the Standard Fire Insurance Company policy state in pertinent part the following:

**DEFINITIONS**

**2. "bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death that results.

* * * *

**4. "insured"** means you and the following residents of your household:

**a.** your relatives;

**b.** any other person under the age of 21 who is in the care of any person named above.

* * * *

**6. "occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions which results, during the policy period, in:

**a.** **bodily injury**; or

**b.** **property damage.**

* * * *

## SECTION II – LIABILITY COVERAGES

**COVERAGE E – PERSONAL LIABILITY**

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, even if the claim or suit is false, we will:

**a.** Pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**; and

**b.** provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

## SECTION II – EXCLUSIONS

**1.** **Coverage E – Personal Liability and Coverage F – Medical Payments to Others** do not apply to **bodily injury** or **property damage:**

* * * *

**f.** arising out of:

**(1)** the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to any **insured**;

**(2)** the entrustment by and **insured** of a motor vehicle or any other motorized land conveyance to any person; or

**(3)** vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above. (See Exhibit "G")

* * * *

It is clear from a review of the evidence in this case that Mr. William J. Milner was the owner of the vehicle his son was driving. (See Exhibit "F".) He was also the named insured. (See Exhibits "F", "H" – Answer to Interrogatory No. 3, and "I" – deposition transcript of William J. Milner, pp. 18, 21.) It is also understood that Mr. Milner paid for the insurance coverage for this vehicle. (See Exhibits "F" and "I".)

## IV. LEGAL THEORY

As depositions have been taken in this case and documents have been reviewed, it is apparent that there was a sequence of negligent acts that led up to this dramatically devastating accident in the early morning hours of August 13, 2005. In fact, Matthew J. Milner's negligent operation of his father's motor vehicle **was the last in the series of negligent acts** that occurred that evening.

In reverse order, the negligent act preceding Matthew Milner's negligent operation of his father's motor vehicle was his father's negligence in making available not only the car, but as well, the keys to that vehicle. This was clearly a negligent act particularly in light of his son's poor driving history and actively suspended license to operate a motor vehicle in the State of Rhode Island. In light of Matthew Milner's poor driving history, the negligent acts of Mr. Milner give rise to an illustrative comparison, that is, the car was the gun and the key was the bullet.

In looking further back in time, there was yet another negligent act which set the two above-described negligent acts in motion. It is arguable that without the first, the second and third negligent acts would not have had the opportunity to happen and the result would not have been a double fatality.

Specifically, Mr. William J. Milner, the father of Matthew "… owed a duty to the general public, including Eldrick L. Johnson, to use due care in the supervision of and activities of his children, including decedent Matthew J. Milner." Further, Mr. William J. Milner "… breached the duty owed by negligently supervising his son, Matthew J. Milner, …. thereby allowing and/or permitting the subject matter motor vehicle to be operated by Matthew J. Milner." (See Exhibit "E", pg. 9.)

## V. LEGAL ANALYSIS

### A. The Possessor-Licensee Theory

Generally, an individual is under no duty to control the conduct of a third person to prevent him from causing harm to another. See Restatement (Second) of Torts § 315. Exceptions to this general rule exist where there is a "special relation" between the individual and the third person, or between the individual and the "other." The relations between an individual and a third person which give rise to a duty to control are set forth in Restatement (Second) of Torts §§ 316-318. Section 318, which establishes a duty of the possessor of land to control the conduct of a licensee, is most appropriate to this case. Section 318 states in pertinent part the following:

> **If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor**
>
> **(a) knows or has reason to know that he has the ability to control the third person, and**
> **(b) knows or should know of the necessity and opportunity for exercising such control**

Let us first concentrate on the phrase "to use land or chattels." Mr. Milner's home is "land" and the motor vehicle a "chattel." Focus at this stage of our analysis will center on Mr. Milner's allowing Matthew to "use" and/or live in the house. Since Mr. Milner permitted this use, he had a duty to control – if he was able and when the need arose – Matthew's conduct to prevent Matthew from creating an unreasonable risk of harm to others.

Mr. Milner breached his duty. The breach was not one of "entrusting" Matthew with a car, but in not taking appropriate steps to prevent Matthew from *leaving the house with car keys* after expressing an intent to drive.[1] As aforementioned, in light of his driving history, Matthew Milner with car keys was akin to a gun filled with bullets. Mr. Milner failed to take any steps to prevent Matthew from using the Milner home as a base of operations for a shooting spree.

Speaking in terms of the policy, Mr. Johnson's death "arose out of" Mr. Milner allowing Matthew to leave the house with *any* car keys. The Miriam-Webster online dictionary defines "arise" as "originating from a source." Mr. Johnson's death originated from Mr. Milner's failure to exercise vigilance to control his licensee's – his son's – actions when he should have known of the need for exerting such control and had an opportunity and the ability to do so.[2]

**B. Possessor-Licensee Theory Has Support In Rhode Island Law**

The Rhode Island Supreme Court adopted Restatement (Second) of Torts § 318 in Volpe v. Gallagher, 821 A.2d 699 (R.I. 2003). In Volpe, the plaintiffs accused the homeowner defendant of negligently allowing her adult son, who was mentally ill, to keep guns and ammunition on the property. The son used the firearms to shoot and kill the plaintiffs' next of kin, who was the defendant's next door neighbor. The plaintiffs' legal theory was that by allowing her mentally ill son to possess guns while living at her house and displaying paranoid and delusional behavior, the defendant, pursuant to § 318, created

[1] Consider that one can only "entrust" what one owns. Mr. Milner's breach of duty would have been the same even if he allowed Matthew to leave the house with *someone else's car keys* to drive *someone else's car*. Thus, "entrustment" had nothing to do with the breach.

[2] In light of the defendant's objection that Mr. Johnson's death "arose out of" Matthew's *driving*, the defendant is confusing "condition precedent" with "origination." There may be several conditions precedent to an occurrence, but the occurrence only "arises out of" or "originates" from the condition precedent which is first in time – here Mr. Milner's failure to exercise any effort to control his licensee's conduct.

an unreasonable risk of bodily harm to others. Id. at 3. The Supreme Court agreed in a 3-1 decision.

One interesting aspect of this decision is how the Supreme Court identified the "conduct" which created an "unreasonable risk of harm to others." Specifically, the conduct triggering § 318 application was not the son's *shooting* firearms, but "using defendant's house for *possessing* and *storing* his guns and ammunition." Id. at 8 (Emphasis added). The Court held in pertinent part the following:

> "The jury was entitled to conclude that, *because [the defendant] failed to put her foot down with respect to Gallagher's gun possession on her property*, she thereby created an unreasonable risk of bodily harm to the victim and to others on or outside her property…" Id. at 13 (Emphasis added).

The Court explicitly rejected the defendant's argument that the murder was not proximately caused by the *storage* of guns and ammunition on her property, but by the independent, criminal actions of her son. Indeed, the defendant's house "functioned as… [an] armory and sanctuary from which [the son] readily could emerge." Id. at 19. Thus, the Court concluded, the murder could be tied to the "negligent misuse" of the defendant's land. Id. at 20.[3]

Similarly, Mr. Johnson's death can be tied to the negligent misuse of the Milner property. In this case, Mr. Milner allowed ready access to both the motor vehicle and the car keys, despite the fact that Matthew's license to drive was suspended and Matt had a driving history which demonstrated his unfitness to operate a motor vehicle. A car, like a gun, can be extremely dangerous if operated by one known to be careless, reckless or

[3] It should be noted that the Court also acknowledged the importance of the close proximity between the house and the murder, which occurred at the property boundary separating the defendant's home from her neighbor's. Id. at 19-20. "The defendant's argument might have more force if Gallagher had taken his shotgun from the basement, hopped into an automobile, and then used the gun to rob a bank five miles away, killing a guard while doing so." Id. Further, given the "unusual circumstances" of the case, the Court admonished readers against "any hasty extrapolation of the legal principles discussed in this opinion to different factual scenarios."

incompetent. Thus, Mr. Milner had a duty – particularly since he provided access to the vehicle and the keys, and also since Matthew was a careless driver – to "exercise constant vigilance to be able to exercise his control over [Matthew] when and if the occasion for it [arose]." Restatement (Second) Torts § 318, comment "c."[4] The inquiry, then, shifts to one of control.

Interestingly, the Volpe Court did not premise "control" on the parent-child relationship between the defendant and her son, nor on the son's mental illness. Id. at 16; rather, the defendant intimated in her direct testimony that her son would have listened to her had she forbidden possession of the guns and ammunition, or she would have disposed of them herself. Id. at 13, 20. The Court might have reached a different result if the evidence showed that the son dominated his mother by physically or psychologically abusing her. Id. at 10. The Court also found it significant that the son was "living at [the defendant's] house only with her permission." Id. at 9.

In our case, there is no evidence that Mr. Milner had lost his ability to control Matthew's leaving the house with car keys and an expressed intent to drive. Mr. Milner could have forbidden Matthew to use the car. On the fateful night, Mr. Milner could have told Matthew that if he left the house with the keys, he would have to find another place to live.

Indeed, the appropriate focus should be on Mr. Milner's ability to control Matthew's *driving a car*, not on "control" in some broader sense. Mr. Milner may not have had "control" over Matthew as a father does a seven-year-old, but Mr. Milner did have control

[4] The Volpe Court stated the landowner's duty as thus: "And if the property possessor fails to take remedial action to neutralize a dangerous instrumentality on her property that a third person then uses to harm another, then 'such an act of a third party, whether innocent, negligent, intentionally tortuous or criminal does not prevent that person from being liable for the harm caused thereby.'" Volpe, 821 A.2d 699 *18-19 [quoting Scheibel v. Hillis, 531 S.W.2d 285, 288 (Mo. 1976)].

over whether Matthew used their home premises as a base of operation for a vehicular homicide.[5]

Lastly, the Volpe Court addressed the defendant's argument that because she was not aware of her son previously using the guns in a dangerous manner, the son's actions were not foreseeable. The Court rejected that argument, holding that while previous conduct is one factor to be weighed in foreseeability analysis, "it should not be a sine qua non when, as here, other circumstances are present that should have alerted the property possessor of the necessity to control the activity in question." Id. at 25. The Court rejected any strict adherence to a "prior similar incidents" rule and insisted that courts "look to the totality of the circumstances in determining foreseeability, applying a balancing approach that 'acknowledges that duty is a flexible concept, [that] seeks to balance the degree of forseeability of harm against the burden of the duty to be imposed.'" Id. at 24 [quoting McClung v. Delta Square Limited Partnership, 937 S.W.2d 891, 901 (Tenn. 1996)].

## VI. CASE LAW APPLICATION TO FACTS ATTENDANT IN THE CASE AT BAR

It is understood and accepted that the homeowner's insurance policy that Mr. Milner had in effect at the time of this accident specifically excluded acts of negligence which involved a motor vehicle and/or negligent entrustment. From the aforementioned scenario, it can be stated that the negligent entrustment theory would be the second act of negligence in a series of negligent acts that occurred on this evening. The third act of negligence was

[5] Note that the Restatement requires the actor to be "present" and to have an *opportunity* to exercise control. Our facts present the situation which was screaming out for Mr. Milner to say or do something – anything – to prevent Matthew from leaving the house with car keys. This distinction is paramount. It is not being suggested that there is an imposition of a duty on homeowners to monitor their adult children 24/7; rather, when a homeowner knows a licensee is about to engage in conduct which poses an unreasonable risk of harm to others, the homeowner has a duty to exert at least some modicum of effort to control the licensee's conduct. Here, Mr. Milner did absolutely nothing. The duty to be recognized is rather modest, to wit: When a homeowner sees a licensee about to engage in conduct that poses an unreasonable risk of harm to others, the homeowner should at least yell, "STOP!"

the negligence occurring out of the use of a motor vehicle. However, this homeowner's policy does not specifically, particularly, or indirectly exclude the first acts of negligence, that is, direct actions of negligence against Mr. Milner for his failure to properly supervise his son, especially in light of his son's poor driving history. The evidence demonstrates that Mr. Milner, as the father of Matthew J. Milner, owned the vehicle that his son was driving on the night of this accident, provided the insurance coverage, Matthew was living at home with his parents, and that Matt Milner had a very bad driving history that predated this accident of August 13, 2005 by a couple of years.

The allegations against the homeowner's policy that the Milner household had in effect at the time of this accident concerns the specific acts of negligence of Mr. Milner – landowner licensor. He had a duty, a continuing responsibility, particularly in light of his son's poor driving history, to take reasonable steps to make sure that his son did not drive. There is no evidence in the record to suggest that Mr. Milner either restricted his son from driving, took his keys away, put the vehicle in storage, or any other steps that would have been reasonable in the facts aforementioned.

Mr. Milner cannot take refuge in the argument that Matthew had not previously been in an automobile accident or otherwise operated a motor vehicle in a highly dangerous manner. In fact, the opposite is true. (Exhibit "I" –pp. 23- 25.) Nevertheless, "only the general risk of harm need be foreseen from the circumstances." Id. at 25. Thus, Mr. Milner needed to foresee only that Matthew, whose license had been suspended, would operate the vehicle in a careless manner. With forseeability established, the "burden" imposed on the Mr. Milner's of the world is not at all onerous; to wit, say "STOP!" If you know or have

reason to know that doing so will likely prevent your licensee from acting in a way which poses an unreasonable risk of harm to others, your duty exists.

To the contrary, as Mr. Milner stated in his deposition transcript, he was aware that his son would be driving that night and using a motor vehicle he owned. (Exhibit "I" – pp. 31 – 32.) Mr. Milner's acts of negligence, in addition to that of being the owner of the vehicle Matt drove, do not only deal with the negligent operation of a motor vehicle. The first acts of negligence that evening or days, weeks or months before the accident deal solely with Mr. Milner's negligent supervisory capabilities. It is directly related to those acts of negligence which occurred at their home, in their household, at the subject matter property of 4 Chiswick Road in Greenville, RI 02828, the property that was insured through Travelers Insurance Company (a/k/a The Standard Fire Insurance Company).

By allowing Matthew to reside with him, Mr. Milner had a duty to exercise reasonable care to prevent Matthew from conducting himself in a way that created an unreasonable risk of bodily harm to others. Once Mr. Milner allowed Matthew access to both a motor vehicle and keys, that duty – because Mr. Milner knew or had reason to know that Matthew was a careless driver – would include exercising constant vigilance to either prevent or control Matthew's use of the car.

The remaining questions in establishing a duty were whether Mr. Milner knew he had the ability to exercise such control, and whether he should have known the necessity for doing so. In our factual scenario, the answer to both questions is in the affirmative. Thus, Mr. Milner had a duty to third parties who were foreseeable victims - drivers and occupants of other vehicles - of Matthew's careless driving. Failure to do so is negligence in the case at bar. It is this very negligence that was the proximate cause of Eldrick L. Johnson's death.

The allegations concerning these acts of negligence against Mr. Milner have nothing to do with the operation of a motor vehicle. Further, these particular allegations of negligence have nothing to do with negligently entrusting his motor vehicle to his son. These acts of negligence have to do with Mr. Milner failing to use due care to restrict, prohibit, refuse to have his son get behind the wheel of a car.

Mr. Milner breached his duty in allowing Matthew access to the keys and to the car. Mr. Milner breached the duty owed as soon as Matthew took the keys and headed for the front door. One could argue that Mr. Milner breached the duty even sooner, by not *forbidding* Matthew from driving any family vehicle as a condition of living in the house. In any event, whichever stage is supplied, one or more breaches of a duty were complete before Matthew even exited the house, and would still be completed even if Matthew never drove a car that night. Matthew's negligent operation of the motor vehicle was yet another negligent act in the series of negligence that night. Nonetheless, Mr. Johnson's death "arose out of" – that is, originated from Mr. Milner's breach of his duty to exercise <u>some</u> effort in controlling his licensee's conduct. Arguably, if Mr. Milner acted as a reasonably prudent person would have in light of the circumstances presented, the second and third acts of negligence in this fatal sequence would not have occurred.

## VII. CONCLUSION

In light of the foregoing, Plaintiff The Standard Fire Insurance Company's Motion for Summary Judgment should be denied as a matter of law since the homeowner's policy of insurance afforded to the Milner household through The Standard Fire Insurance Company did provide coverage as aforementioned. In accordance, therefore, The Standard

Fire Insurance Company's Motion for Summary Judgment should be denied as a matter of law.

Defendants Rebecca L. Gushlaw, Individually and as Natural Parent, Next Friend, and Guardian of Jasmine M. Johnson (minor), Preston E. Johnson (minor), Trevor A. Johnson (minor), Colbey J. Johnson (minor), and Rebecca L. Gushlaw and Judith Gushlaw, as Co-Administrators of the Estate of Eldrick L. Johnson

By their Attorneys

Decof & Decof, P.C.
One Smith Hill
Providence, RI 02903
Tel. (401) 272-1110
Fax (401) 351-6641

/s/Donna M. Di Donato
Donna M. Di Donato Bar #3078

**CERTIFICATION**

I hereby certify that an exact copy of the within document was electronically mailed to the Electronic Case Filing system of the United States Court for its distribution to all counsel of record this 20th day of November, 2007.

/s/Donna M. Di Donato

Gushlaw/Federal P001